# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION
# (TOLEDO)

| | |
|---|---|
| **DENZELLE TUCKER**<br>202 Cochran St.<br>Memphis, TN 38105<br>    **PLAINTIFF,**<br>  v.<br><br>**SANTA BARBARA TAX PRODUCTS GROUP, LLC**<br>*Statutory Agent*:<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>**&**<br><br>**GREEN DOT CORPORATION**<br>*Statutory Agent:*<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>**&**<br><br>**CIVISTA BANCSHARES, LLC,**<br>**D/B/A CIVISTA BANK**<br>*Statutory Agent:*<br>Dennis G. Shaffer<br>100 E. Water St.<br>Sandusky, OH 44870<br><br>    **DEFENDANTS.** | **Case No.:**<br><br>**Judge:** |

## COMPLAINT

**NOW COME** Plaintiff, Denzelle Tucker, by and through his undersigned attorney, Norman A. Abood, and for his *Complaint for Damages* against Santa Barbara Tax Products Group, Green Dot Corporation, and Civista Bank (collectively referred to hereinafter as "**Defendants**") submit as follows:

### I. THE PARTIES

1. Plaintiff, Denzelle Tucker ("Plaintiff" or "Tucker") is an individual who at all times material herein is and has been a citizen of the State of Tennessee.

2. Defendant, Santa Barbara Tax Products Group ("SBTPG"), a subsidiary of Green Dot Corporation, is a Delaware Limited Liability Company located in San Diego, California, of which, upon information and belief, have no members who reside in Tennessee.

3. Defendant, Green Dot Corporation, is a Delaware Corporation headquartered in Austin, Texas.

4. Defendant, Civista Bancshares, Inc., d/b/a Civista Bank, is an Ohio Corporation headquartered in Sandusky, Ohio.

### II. JURISDICTION AND VENUE

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is a Tennessee resident. Defendant, SBTPG, is a Delaware limited liability company located in San Diego, California, which upon information and belief, has no members who reside in Tennessee. Defendant, Green Dot Corporation, is a corporation who, upon information and belief, is incorporated in Delaware and headquartered in Austin, Texas. Defendant, Civista Bank, is a corporation who, upon information and belief, is incorporated in Ohio and headquartered in Sandusky, Ohio. Therefore, complete diversity of citizenship exists.

The amount in controversy, exclusive of interest and costs, exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000).

6. Venue in the Northern District of Ohio is proper pursuant to 28 U.S.C. § 1391(a)(2) and (b)(2) because a substantial portion of events giving rise to this claim, the freezing of assets, occurred at Civista Bank located and headquartered in Sandusky, Ohio.

### GENERAL AVERMENTS

7. On or around December 17, 2020, Tucker, and Defendant SBTPG, jointly and severally through their relationship with Defendant Green Dot Corporation (jointly "Program Defendants"), entered into the "2021 Financial Services Agreement" ("the Agreement"). A copy of the Agreement is attached hereto as Exhibit 1.

8. The Agreement has a "Governing Law" clause which reads as follows; "This agreement shall be governed and construed in accordance with the laws of the United States and, to the extent state laws applies [*sic*], the substantive laws of the State of Ohio."[1]

9. The Agreement states that Tucker would prepare federal tax returns for clients and submit those returns through Program Defendants' taxpayer refund processing services program ("the Program") and receive a portion of the tax return funds ("the Funds") in the form of tax preparation fees ("Plaintiff's Fees").

10. Program Defendants' Program utilized Defendant Civista Bank ("the Bank") as the banking services provider for the Program.

11. Tucker, from January 2021 through February 2021, fulfilled his obligation by completing and submitting valid and accurate tax returns on behalf of his clients.

---

[1] Exhibit 1; §9.12.

12. Program Defendants accepted these returns into the Program and submitted them to the Internal Revenue Service ("IRS") on behalf of Tucker and his clients.

13. Program Defendants, through their relationship with Defendant Civista Bank, took possession of the Funds when they were distributed from the IRS.

14. Program Defendants promptly removed their fees and the Bank's fees from the Funds once they were received.

15. Program Defendants were obligated to withhold Plaintiff's Fees and release the remainder of the Funds to the clients.

16. Defendants upheld their obligations through February 26, 2021, when Tucker received his last distribution of Plaintiff's Fees from Defendants. A copy of the confirmation of payment email is attached hereto as Exhibit 2.

17. On or around February 26, 2021, Defendants, jointly and/or severally, froze Plaintiff's account without notice to Plaintiff.

18. Defendants, jointly and/or severally, represented that Plaintiff's account was frozen for "suspicious activity".

19. As a result of Defendants' freezing of Plaintiff's account, an estimated 30 percent of Plaintiff's clients did not receive tax return funds that were approved and released from the IRS into the possession of Defendants.

20. Defendants, jointly and/or severally, represented to Plaintiff that they were investigating the suspicious activity in coordination with the IRS.

21. Plaintiff made continued requests to Program Defendants for evidence of the investigation and/or the "suspicious activity", to which Defendants have failed to and/or refused to

provide. Letters containing those repeated requests are attached hereto as Composite Exhibit 3.

22. Program Defendants never released the findings of this investigation, expressing only in a letter from their respective Counsel to Plaintiff broad examples of potential issues without an opportunity for Plaintiff to respond to specific issues. A copy of the letter is attached hereto as Exhibit 4.

23. After freezing the account for over a month and holding onto funds due to both clients and Tucker, Defendants, jointly and/or severally, represented to Plaintiff in April 2021 that the Funds, at the instruction of the IRS, were to be returned to the Bureau of Fiscal Service of the United States Department of Treasury.

24. Tucker contacted the IRS after learning that the Funds were to be returned to the IRS and was told by the IRS representative that the IRS does not take return funds in such a manner.

25. Tucker received no additional fees owed to him from February 26, 2021, to present.

26. Tucker has received continued complaints from his customers as Defendants hold both Plaintiff's funds and his clients' funds.

27. Tucker detrimentally relied upon the Plaintiff Fees to pay his contracted tax preparers.

28. Tucker continued to pay his contracted tax preparers through the tax season (March through June) without receiving any fees owed to him from Defendants.

### COUNT I – BREACH OF CONTRACT

29. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 - 26 hereinabove as if fully rewritten herein.

30. Plaintiff and Defendant entered into the Agreement on or around December 17, 2020.

31. Plaintiff, as shown hereinabove, performed all duties and obligations under the Agreement.

32. Defendants, jointly and/or severally, breached the Agreement by failing to distribute Plaintiff's Fees as required by the Agreement.

33. Plaintiff has suffered and will continue to suffer damages as a direct and proximate result of Defendants' breach.

34. Plaintiff is owed the sum of at least $500,000.00, the full extent of which to be proved at trial, plus pre and post judgement interest at the maximum rate allowed by law until said sum and all interest is paid in full.

### COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

35. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 - 32 hereinabove as if fully rewritten herein.

36. As set forth above, the parties entered into the Agreement, which included, among other things, an implied covenant of good faith and fair dealing.

37. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of that Agreement.

38. Defendant materially breached the implied covenant of good faith and fair dealing in the Agreement by its actions described hereinabove, among other things, by failing to

compensate Plaintiff his work already completed, without affording Plaintiff the opportunity to review and refute the investigation performed by Defendants.

39. As a direct and proximate cause of Defendants' acts, Plaintiff has suffered and will continue to suffer general and consequential damages in an amount to be proved at trial.

### COUNT III – UNJUST ENRICHMENT

40. Plaintiff repeats and reiterates each and every allegation set forth in paragraph 1 - 35 hereinabove as if fully rewritten herein.

41. In consideration of Plaintiff providing continued services for the Program, Defendant agreed to compensate Plaintiff for these services and understood that Plaintiff expected to be paid for those services.

42. Plaintiff agreed to perform services for, and did perform services for, Defendant with the express understanding that he was entitled to receive appropriate compensation, including the tax preparation fees.

43. Defendant has repudiated its obligation to compensate Plaintiff for the services Plaintiff, in fact, provided.

44. Plaintiff is entitled to the tax preparation fees for the returns which he and/or his contracted preparers submitted to the Program which is no less than the agreed amount by the parties.

7

45. Allowing Defendants to retain the benefits of the Plaintiff's services, including but not limited to Defendants retaining their fees, without fully compensating Plaintiff for the services will cause Defendants to, jointly and/or severally, be unjustly enriched.

46. As a direct and proximate cause of Defendants' unjust enrichment, Plaintiff has suffered injury to the extent of the agreed upon compensation for its services and the benefits conferred upon Defendants in an amount to be proven at trial.

## COUNT IV – PROMISSORY ESTOPPEL

47. Plaintiff repeats and reiterates each and every allegation set forth in paragraph 1 – 42 hereinabove as if fully rewritten herein.

48. Plaintiff's performance under the Agreement was done so under the expectation of payments based upon the parties' Agreement.

49. Defendants, jointly and/or severally, should have reasonably expected that Plaintiff would rely on such promises and representations.

50. Plaintiff did, in fact, justifiably rely on such promises to compensate Plaintiff for services provided in accordance with the parties' Agreement.

51. Defendants, jointly and/or severally, has materially breached the Agreement by repudiating its obligations under the Agreement and should be estopped from taking any action contrary to the written promises made to Plaintiff.

## COUNT V – CONVERSION

52. Plaintiff repeats and reiterates each and every allegation set forth in paragraph 1 – 49 hereinabove as if fully rewritten herein.

53. Defendants collected and held funds on behalf of Plaintiff.

54. Defendants, jointly and/or severally, have withheld these funds from Plaintiff without providing examples of "suspicious activity".

55. Plaintiff's have demanded these funds, on multiple occasions, which are amounts due to Plaintiff for work already provided.

56. Defendants have refused to remit payment of the withheld funds.

57. At no time did Defendants have the consent of Plaintiff to retain ownership of the funds.

58. Defendants have and intend to continue to maintain and keep these funds, despite having no legal right to said funds.

59. Defendants have converted the funds.

60. Defendants are liable to Plaintiff for conversion of these funds.

61. As a direct and proximate cause of Defendants Conversion, the Plaintiff has been harmed to his detriment in an amount to be proven at trial.

## COUNT VI- BREACH OF FIDUCIARY DUTY

62. Plaintiff repeats and reiterates each and every allegation set forth in paragraph 1 – 56 hereinabove as if fully rewritten herein.

63. Defendants have retained the funds in such circumstances that the Defendants may not in good conscience retain beneficial interest.

64. Defendants are holding the funds as constructive trustee for Plaintiff's benefit.

65. At such time Defendants became trustee, they owed and continue to owe Plaintiff a fiduciary duty.

66. Defendants have breached their fiduciary duty to Plaintiff, as trustee of the funds held for the benefit of Plaintiff, by failure to remit payment of said funds to Plaintiff.

**WHEREFORE**, Plaintiff prays for judgement against the Defendants, jointly and/or severally, as follows:

(a) As and for actual compensatory damages for the Plaintiff, Denzelle Tucker, a sum in excess of Five-Hundred Thousand Dollars ($500,000.00), the full extent of which will be proven at the trial of this matter.

(b) The costs incurred by the Plaintiff in bringing these proceedings, pre & post judgment interest as provided by law, and any such further legal or equitable relief as this Honorable Court deems just, proper, and owing the Plaintiff.

Date: <u>June 21, 2022</u>     Respectfully Submitted,
**THE LAW OFFICE OF NORMAN A. ABOOD**

<u>/s/ Norman A. Abood</u>

Norman A. Abood (OH. Sup. Ct. #0029004)
101 Broadcast Building
136 N. Huron Street, Suite 101
Toledo, OH  43604
Phone:	419-724-3700
Fax:	419-724-3701
E-Mail:	Norman@nabood.com
*Attorney for Denzelle Tucker*