**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION
(TOLEDO)**

| | |
|---|---|
| **DENZELL TUCKER** )<br>    **PLAINTIFF,** )<br>    v. )<br> )<br> )<br>**SANTA BARBARA TAX PRODUCTS GROUP,** )<br>**LLC,** *ET AL.*, )<br>    **DEFENDANTS.** )<br> )<br> )<br>_____/ ) _____/ | Case No.: 3:22-cv-01095-JC<br><br>JUDGE: HON. JAMES G. CARR |

**PLAINTIFF'S MEMORANDOM IN OPPOSITION OF DEFENDANT CIVISTA'S**

**MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.    INTRODUCTION**

Plaintiff, Denzelle Tucker, brings this action, in part, against Defendant, Civista Bancshares, LLC d/b/a Civista Bank ("Civista" or "Bank") in an effort to recover funds wrongfully held and/or distributed by Civista - funds owed to Mr. Tucker which originated from Mr. Tucker's work pursuant to a tax refund processing agreement (the "Contract" or the "Agreement") with both Civista and Defendant Santa Barbara Tax Products Group, LLC ("SBTPG"). Civista claims in its Motion to Dismiss ("Motion", Doc # 17) that Plaintiff's causes of action against it are barred based

- 1 -

certain terms and conditions in the Contract. Civista's argument, however, fails to inform the Court that the Contract clause relied upon by Civista is both adhesive and unconscionable, either of which provide a sufficient basis upon which to deny Civista's Motion.

Moreover, Civista, clearly aware Plaintiff's Complaint ("Complaint", Doc #1) asserts in the alternative that the Contract is unenforceable and unconscionable, argues that Mr. Tucker is barred from raising a claim against Civista unless Civista's wrongdoing reaches the level of "willful misconduct". While Defendant is technically correct in that Mr. Tucker did not use the verbiage "willful misconduct", the claims as detailed in the Complaint are clearly based on and the result of Civista's willful misconduct. The Complaint details Civista's actions both in breach of Contract, and as additional tortious actions, which clearly fall outside the scope of the Contract.

Defendant additionally fails to mention the timing of its Motion. On August 22, 2022, at 2:00pm, counsel for both parties[1] conducted their pre-trial planning meeting prior to the initial Status Conference. During this meeting, one of the issues discussed was the recommended cut-off for amending the pleadings. At no point did Counsel state they were planning to file a Motion for Judgment on the Pleadings in any attempt to resolve this matter without the use of judicial resources. The following day, August 23, 2022, Defendant filed their Motion for Judgment on the Pleadings. Plaintiff then asked seeking to consent to Plaintiff filing an amended Complaint, which while not believed to be necessary, would certainly be a more expeditious and cost-effective manner of resolving Civista's concerns. Defendant's counsel denied the request.

---

[1] Plaintiff was represented on the telephone conference by Attorney Abood's Law Clerk, Tyler Lantzsch, who acted solely on the instructions of Attorney Abood and did not agree to any terms without the direct direction of Attorney Abood.

- 2 -

Accordingly, for the reasons set forth above and as more fully detailed below, Plaintiff respectfully requests that this Honorable Court deny Civilta's Motion for Judgment on the Pleadings.

## II. FACTUAL BACKGROUND

Plaintiff Tucker entered into the Contract with SBTPG and Civista on or around December 14, 2020. *Complaint*, ¶7. The Agreement's main purpose was to provide processing services for Tucker's tax preparation business during the 2020-2021 tax year. *Complaint*, ¶9. For many years prior to 2020-2021, Tucker had worked under other tax preparers, learning the ropes of the business, and building invaluable relationships with his community and clients. As his relationships and experience as a tax preparer grew, Tucker had the goal of opening his own "shop" and providing these services under his own name. part of the services Tucker sought to provide included not just assisting taxpayers with the preparation of their individual tax returns, but also process and hopefully expediting the taxpayer's receipt of refunds legally due from the IRS. 2020-2021 was that year for Tucker, as he had decided to go out on his own, start his own business and begin this new chapter in his professional career as an independent tax preparer.

To facilitate his new business, Tucker entered into the Contract in good faith, which was represented by Defendants as authorized by the IRS, anticipating that Defendants, including Civista, would participate in good faith throughout the term of the Agreement. This would be true for Tucker's expectation of Defendants' good faith compliance proved true during the first part of the tax season, i.e., through February 26, 2020. *Complaint*, ¶16. During this period, Civista, in compliance with the Agreement, received tax refunds from the IRS due taxpayers whose returns were prepared by Tucker and his associates and then released a portion of the refund (tax preparation fees) to Tucker per Civista's obligation under the Agreement. *Complaint*, ¶15. On or

shortly after February 26, 2020, Tucker's Civista account was frozen and he was unable to recover the IRS refunds received by Civista returns completed and submitted through Tucker. Further, Tucker was suddenly and without verifiable justification barred from filing any additional returns with SBTPG and Civista. *Complaint*, ¶17. SBTPG and Civista claimed without any verifiable support that Tucker's suspension and the seizure of funds already earned by him by was reportedly in response to a claim of "suspicious activity" and an investigation in supposedly being conducted in conjunction with the IRS. *Complaint*, ¶20.

Aware he had not done anything wrong, Tucker immediately and repeatedly requested Civista and SBTPG, provide information regarding the claimed investigation in order to respond to any charges being leveled against him and to simply understand what Civista and SBTPG were asserting as "suspicious activity". *Complaint,* ¶21. Plaintiff's confusion, and suspicion that his funds were being wrongfully seized based upon the ruse of a claim of "suspicious activity", continued to grow as Civista and SBTPG refused to provide any information regarding the basis for the claimed suspicions and alleged IRS investigation. *Complaint*, ¶22.

As Defendants' refusal to provide any verifiable basis for their right to seize Plaintiff's earnings and termination of his right to process additional tax returns with them continued, Plaintiff continued to demand information as to the status of the claimed investigation and/or the alleged complaints against him. *Complaint,* ¶21. These demands fell mostly upon deaf ears until April 23, 2021, when Green Dot's Corporate Counsel, Kristen Juhan, in writing confirmed that the refunds generated from tax returns generated thru Mr. Tucker's services were, in fact, "received from the IRS and held by Civista Bank". *Complaint,* ¶22. Per Ms. Juhan's correspondence, Green Dot, which owns Santa Barbara Tax Products Group, ***was instructed by the IRS to hold, and***

*subsequently return, the refunds held by Civista Bank to the IRS through the United States Department of the Treasury.* Ms. Juhan even provides a reference number for the transaction!

Yet, when Mr. Tucker reached out to the IRS for clarification as to why the funds were returned, he was told by the IRS representative that they do not take return of funds in such a manner and that they had no record of such transactions taking place. *Complaint,* ¶24.

When Mr. Tucker told SBTPG, Green Dot, and Civista Bank what he was told by the IRS, he was informed in by a letter from the SBTPG "Complaint Department" that Defendants "relied on repeated and explicit written instructions from the IRS to return the Disputed Tax Refund Amounts." *Complaint Ex.* 4(c).

Despite repeated requests from Tucker, not a single written communication or instruction from the IRS was provided to Tucker as proof of the claimed investigation or the alleged IRS "instructions" to returns funds. *Complaint* ¶22. Moreover, Civista, SBTPG, and Green Dot claim they have no duty to investigate the alleged claims and therefore had every right to terminate this claim. *Complaint Ex.*4(c).

To date, Tucker has yet to be provided any proof, any verifiable basis to believe Defendants' claims that there was an IRS investigation let alone any *documentation* expressing the instruction for Civista Bank to return such funds, any *documentation* that the funds were sent back to the IRS, or any basis for alleging "suspicious activity" as alleged by Defendants as the reasons justifying their unilateral seizure of funds and good faith basis for terminating the Agreement.

### III. LAW AND ARGUMENT

    a.  S<small>TANDARD OF</small> R<small>EVIEW</small>

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; "After the pleadings are closed-but early enough not to delay trial, a party may move for judgment on the pleadings." *Id.* A Judgment on the Pleadings is proper when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Red Zone 12, LLC v. City of Columbus*, 758 F. App'x 508, 512 (6th Cir. 2019) (quoting *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). The standard of review for a motion for judgment on the pleadings is the same as the standard for motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "which permits dismissal of a complaint for 'failure to state a claim upon which relief can be granted.'" *Stolz v. J&B Steel Erectors, Inc., No.*1:14-cv-44, 2014 U.S. Dist. LEXIS 69753, at *2-3 (S.D. Ohio May 21, 2014) (quoting *Vandenheede v. Vecchio*, 541 Fed. Appx. 577, 2013 WL 5433467, at *2 (6th Cir. 2013)).

Dismissal is only appropriate when, accepting all facts alleged in the complaint as true, the nonmoving party has not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, the Plaintiff must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of his claims. *Id*. at 556. The Court, in hearing a motion for judgment on the pleadings, must accept all factual allegations as true, although "a legal conclusion couched as a factual allegation' need not be accepted as true." *Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 357 (6th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a course of action, supported by mere conclusory statements, will not suffice." *Ashcorft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Additionally, the Federal Rules of Civil Procedure provide for liberal notice pleading at the outset of the litigation because "the provisions for discovery are so flexible" that, by the time

- 6 -

a case is ready for summary judgment, "the gravamen of the dispute [has been] brought frankly into the open for inspection by the court." *Swierkiewicz v. Sorema N.A.*, 563 U.S. 506, 512-513, 152 L.Ed. 2d 1, 122 S. Ct. 992 (2002). Both the state law of Ohio and the Federal Rules of Civil Procedure allow such liberal notice pleading. Federal Rule of Civil Procedure 8(a)(2), provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley* v. *Gibson,* 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002).

Clearly the law favors adjudication of claims on their merits. For example, as explained by the United States Sixth Circuit Court of Appeals:

> Upon a plaintiff's request for leave to amend the complaint, a district court is obliged to give leave freely "when justice so requires." *See* Fed. R. Civ. P. 15(a); *Tefft*, 689 F.2d at 639. This Court has explained that Federal Rule of Civil Procedure 15 is intended to reinforce ***the principle that cases should be decided on their merits and not merely upon the technicalities of the pleadings***. *Tefft*, 689 F.2d at 639 (citing *Conley v. Gibson*, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).
> - *Thacker v. City of Columbus*, 328 F.3d 244, 252, 2003 U.S. App. LEXIS 8121, *12-13, 2003 FED App. 0127P (6th Cir.), 9 (emphasis added), relied upon in *Hopper v. Credit Assocs.*, 2021 U.S. Dist. LEXIS 231482, *7, 2021 WL 5754732.

  b. LEGAL ARGUMENT

  a. CONTRACT CLAUSE IS UNENFORCEABLE

Civista Bank centers its argument on the basis of an exculpatory clause which, under Ohio Law, is *generally* enforceable because "[p]arties are free to enter into any contract the subject of which is not prohibited by law." *Motorists Ins. Co. v. BFI Waste Mgmt.,* 133 Ohio App. 3d 368, 377, 728 N.E. 2d 31, 37 (2d Dist. 1999). Further citing *Nahra v. Honeywell, Inc.*, "limitation of

- 7 -

liability clauses (including exculpatory clauses) may be freely *bargained for* in Ohio." 892 F. Supp. 962, 969 (N.D. Ohio 1995) (emphasis added).

Though the law states that "[g]enerally, in Ohio, exculpatory clauses, which relieve a party from its own negligence, are not against public policy", that is not always the case. *Pruitt v. Strong Style Fitness*, 2011 Ohio App. LEXIS 4343, 2011-Ohio-5272 ¶ 8, (8th Dist.). "Although attempts to excuse liability for negligence by contract are disfavored in the law, absent "unconscionability" or vague and ambiguous language, such limiting or exculpatory provisions will be upheld. *Orlett v. Suburban Propane*, 54 Ohio App. 3d 127, 128 (12th Dist. 1989).

Clearly, the issue of unconscionability is a question of law. *Ins. Co. of North Am. V. Automatic Sprinkler Corp.*, 67 Ohio St.2d 91, 98, 423 N.E.2d 151 (1981). The standard for the Court's review is well-recognized and provides that a contract evading liability for negligence will generally be enforced (1) when the contracting parties stand in roughly equal bargaining positions, or (2) even if great disparity exists in the relative positions of the contract parties, when nonexculpatory contract options are provided for a greater consideration, instead of accepting the risk of the superior party's negligence. *Id.* (citing *Motorists Mut. Ins. Co. v. Jones* (1996). 9 Ohio Misc. 113, 115, 38 O.O. 2d 154, 156, 223 N.E. 2d 381, 383).

As to whether a contract clause is unconscionable, "A contract clause is generally considered unconscionable when there is an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *McDonough v. Thompson,* 8th Dist. Cuyahoga No. 84342, 2004-Ohio-6647, ¶ 17 (citing *Collins v. Click Camera & Video, Inc.,* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294). "To establish that a contract clause is unconscionable, the complaining party must demonstrate both 'substantive unconscionability' and 'procedural unconscionability'." *Id*.

Substantive unconsciousability refers to the actual terms of the agreement and whether the terms are unfair and unreasonable. *Collins,* supra at 834. Clauses are unconscionable where the "clauses involved are so one-sided as to oppress or unfairly surprise [a] party" *Neubrander v. Dean Witter Reynolds, Inc.*, (1992), 81 Ohio App.3d 308, 311-312, 610 N.E.2d 1089.

Procedural unconscionability regards the circumstances surrounding the execution of the agreement between the parties and occurs when no voluntary meeting of the minds was possible due to such circumstances. *Collins*, supra, at 834. "In determining procedural unconscionability, a court should consider factors bearing on the relative bargaining position of the contracting parties – including age, education, intelligence, business acumen, and experience in similar transactions". *Id*. Additionally, the court must consider "whether the terms were explained to the weaker party, and who drafted the contract." *Id*. (citing *Johnson v. Mobil Oil Corp.*, (E.D. Mich. 1976), 415 F. Supp 264, 268).

Civista asks this Court to make a determination of law without allowing the Court an opportunity to ascertain the basis upon which to make such a determination. The basis upon which the Court properly makes a determination of unconscionability is established by an examination of facts, facts which are not required to be fully pled in a Complaint and which are typically established through post pleading discovery. Clearly, Defendant fears disclosure and examination of its actions and seeks to prevent it by refusing to consent to allowing an Amended Complaint and instead seeking dismissal on the pleadings.

The Complaint clearly asserts extra contractual claims Count III – Unjust Enrichment, and tort claims, Count V- Conversion, Count VI – Breach of Fiduciary Duty, Count II – Bad Faith against Civista as well as the other Defendants. These tort claims are by definition, based upon willful, wrongful misconduct. Respectfully, it would be unreasonable for the Court to make a

determination of the level of unconscionability, or conscionability, of the claimed exculpatory clause without a fulsome record allowing of such determination.

As to the plausibility of Plaintiff's claims, the facts will show that at no point was the participant, i.e., Tucker, involved in the bargaining process of this Agreement. In fact, the online scheme by which Civista and SBTPG offer their services required Tucker to pay for TaxWise software prior to the Agreement even being disclosed for review.

By asking the Court to dismiss this case at this stage of the proceedings, Civista is inviting the Court to engage in what could be reversable error. In *Insurance Co. of North Amer. v. Automatic Sprinkler Corp.*, the Ohio Court of Appeals remanded the unconscionability issue back to the Court of Common Pleas because there was no unconscionability hearing held. On appeal to the Supreme Court of Ohio, the Court held: "[t]his decision permits both sides to be heard and may prevent a substantial injustice." 67 Ohio St. 2d 91, 98. The Supreme Court of Ohio recognized the importance of allowing both parties to be fully heard on the issue of whether an exculpatory clause in a contract is unconscionable, which can only be accomplished after an opportunity for discovery.

      b.  PLAINTIFF PLED WILLFUL MISCONDUCT

Not only is the claimed effectiveness of the exculpatory clause relied upon by Civista as the basis for its Motion to Dismiss not properly determined at this stage of the proceedings, Plaintiff's Complaint, through the various tort causes of action asserted, are clearly by definition premised upon willful misconduct. This wrongful conduct includes willfully freezing of Tucker's accounts without just cause, willfully seizing and, allegedly, disbursing funds properly owed to Tucker to others, and their continued and willful failure to provide information to Tucker

throughout the process, all facts which are clearly alleged in Plaintiff's Complaint. *Complaint* ¶17; 22-23. To allow Civista to willfully convert fees owed to Plaintiff for work, which has already been completed and accepted by the IRS, and to then hide behind an exculpatory contract clause is not only inequitable, but also flies in the face of public policy. The public policy on this matter is that "[a]s a general proposition, attempts to excuse liability for negligence by contract are disfavored in the law." *Collins* at 832. To allow Civista to excuse the totality of its liability as it pertains to any form negligence in relation to the Contract and subsequently allow it to retain the funds as a result would not only allow them to be unjustly enriched by its actions but it would then be immune from any attempts to correct that injustice.

As the Complaint clearly and repeatedly gives Civista notice of the claimed willful, wrongful misconduct dismissal as a matter of law on the pleadings alone is not justified. Accordingly, Plaintiff, Mr. Tucker, respectfully requests the Court deny Civista's Motion to Dismiss.

Alternatively, should the Court find that Plaintiff's claims should be more specifically set forth in the Complaint, Plaintiff has contemporaneous with this Response in Opposition filed a motion for leave to amend his Complaint, with an attached copy of the proposed Amended Complaint. Hopefully, while again not conceded to be required, the Amended Complaint is sufficient to clarify for Civista, the issues of willfulness and unenforceability asserted against it, should the Court find it necessary.

### IV. Conclusion

For the reasons set forth above, it is respectfully requested that this Honorable Court deny Civista's Motion for Judgment on the Pleadings.

Date: October 7, 2022	Respectfully submitted,
	**THE LAW OFFICE OF NORMAN A. ABOOD**

	/s/ Norman A. Abood
	Norman A. Abood (OH. Sup. Ct. #0029004)
	101 Broadcast Building
	136 N. Huron Street, Suite 101
	Toledo, OH  43604
	Phone:	419-724-3700
	Fax:	419-724-3701
	E-Mail:	Norman@nabood.com
	*Attorney for Denzell Tucker*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Memorandum in Opposition of Defendant Civista Bancshares, LLC's Motion for Judgment on the Pleadings* was electronically filed on the 7th day of October 2022. Notice of filing will be sent to all parties by the operation of the Court's electronic filing system.

	*/s/ Norman A. Abood*
	*Attorney for Plaintiff*